UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Deondra L. Liggion,

        Petitioner,

v.

Fredeane Artis,[1]

        Respondent.
_____/

Case No: 17-cv-13009
Honorable Paul D. Borman

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

This matter is before the Court on Deondra L. Liggion's petition for a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1.) Petitioner, who is in the custody of the Michigan Department of Corrections, challenges his convictions for second-degree murder, Mich. Comp. Laws § 750.317, assault with intent to do great bodily harm less than murder, Mich. Comp. Laws § 750.84(1)(a), felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and three counts of possession of a firearm during the commission of a felony, second offense, Mich. Comp. Laws §

---

[1] The proper respondent in a habeas action is the petitioner's custodian. *See* Rule 2(a), Rules Governing Section 2254 Cases, 28 U.S.C. § 2254. Petitioner is presently incarcerated at the Thumb Correctional Facility where Fredeane Artis is the Warden. The Court directs the Clerk of Court to amend the case caption to substitute Fredeane Artis as the respondent.

750.227b(2). He claims that the evidence was insufficient to establish his guilt beyond a reasonable doubt.

For the reasons discussed, the Court denies the petition and denies a certificate of appealability. The Court grants Petitioner leave to proceed *in forma pauperis* on appeal. The Court orders the case caption amended to substitute Fredeane Artis as the respondent.

**I. Background**

Petitioner's convictions arise from a shooting at Club Fire in Kalamazoo on November 30, 2013, that injured Kira Briley and killed Jeffrey Pratt. Petitioner and his cousin, Tasha Ezell, went to Club Fire that night for a music release party. The club was described as very crowded with over 100 guests in attendance. (ECF No. 9-4, PageID.599.) When Ezell and Petitioner arrived, they remained in the parking lot for a time. Petitioner saw someone he believed had connections to a "south side gang" tuck a handgun into his waistband and enter the club. (ECF No. 9-4, PageID.639-40.) Petitioner decided to return to his home where he retrieved two guns. (*Id.* at PageID.634.) Petitioner and Ezell then returned to the club. (*Id.*) He entered the club carrying at least one of the guns. (*Id.* at PageID.639.)

Shortly after Petitioner entered the club, several gunshots were heard. (*Id.*) When police arrived, they found Jeffrey Pratt had been shot in the head. (ECF No. 9-3, PageID.436-37.) He later died from the gunshot. Another guest, Kira Briley,

2

suffered a gunshot wound to her arm. (*Id.* at PageID.608.) The bullet remained lodged in her arm until it was surgically removed a week later. (*Id.* at 609-10.) The bullet was a 9-millimeter. (ECF No. 9-5, PageID.767.)

Police became interested in interviewing Petitioner after multiple witnesses mentioned someone known as "Chill-Chill." (ECF No. 9-4, PageID.630.) Investigators determined that Petitioner was known by that nickname. (*Id.*) Petitioner voluntarily went to the station to speak with police. He admitted to being at the club on the night of the shooting but denied having a gun. (*Id.* at PageID.633-34.) After further questioning, he admitted that, after he saw someone enter the club with a gun, he drove back to his house to retrieve two guns. (*Id.* at PageID.635-36.) He returned to the club and, once inside, showed his gun to friends. (*Id.* at PageID.642.) After initially denying that he fired his gun, Petitioner eventually admitted to police that he had fired his weapon twice but said he pointed the gun at the ceiling. (*Id.*) He denied shooting anywhere other than at the ceiling. (*Id.*)

Petitioner agreed to show police where he had hidden the guns. He brought police to an area behind a garage in Kalamazoo where, buried under leaves and brush, police found a shopping bag with two loaded 9-millimeter handguns, an empty box of "PMC" brand ammunition, and two loaded magazines. (*Id.* at PageID.643-648.) One of the handguns, a Ruger, had a misfed round in the chamber. (*Id.* at PageID.680.) The misfed round was a "PMC" brand bullet with a red circle

3

on the cap. (*Id.* at PageID.681.) The majority of the other bullets found in the Ruger and the other gun were "PMC" brand. (*Id.* at PageID.681-82.)

Michigan State Police firearms expert Jeffrey Crump testified that the bullet removed from Briley's arm and a 9-millimeter bullet that had been fired through the ceiling were both fired from Petitioner's 9-millimeter Ruger handgun. (ECF No. 9-5, PageID.767-68.) Gary Latham, a crime lab specialist, testified as an expert in crime scene investigation. (*Id.* at PageID.792.) Latham noted that the bullet wound on Briley's arm was elongated and irregularly shaped meaning that the bullet was in unstable flight when it struck her arm. (*Id.* at PageID.794-797.) He opined that the wound's shape and the fact that the bullet did not exit Briley's arm suggested that it had struck something else before it struck Briley. (*Id.*) Latham concluded that the bullet that lodged in Briley's arm had first struck and passed through Pratt's head. (*Id.* at PageID.849.)

Petitioner was charged with first-degree premeditated murder, assault with intent to murder, being a felon in possession of a firearm, and three counts of possession of a firearm during the commission of a felony.

Following a jury trial in Kalamazoo County Circuit Court, Petitioner was convicted of second-degree murder as a lesser included offense of first-degree premeditated murder, assault with intent to do great bodily harm as a lesser included offense of assault with intent to murder, and four firearms-related charges. He was

4

sentenced as a fourth habitual offender to 35 to 50 years for second-degree murder, 25 to 40 years for assault with intent to do great bodily harm less than murder, 10 to 20 years for being a felon in possession, and 5 years for each felony-firearm conviction. The felony-firearm convictions to be served concurrently with one another but consecutively to the other sentences.

Petitioner appealed his convictions claiming that the evidence was insufficient to prove that he fired the shot that killed Jeffrey Pratt or that he intended to assault Kira Briley. The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Liggion*, No. 325166, 2016 WL 1688678 (Mich. Ct. App. Apr. 26, 2016). The Michigan Supreme Court denied leave to appeal because it was "not persuaded that the question presented should be reviewed by [the] Court." *People v. Liggion*, 500 Mich. 897 (2016).

On September 5, 2017, Petitioner filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254, raising the same sufficiency of the evidence claim presented in his state court appeals. Petitioner later filed a motion to stay the proceeding to allow him to exhaust state court remedies for additional claims not raised in his habeas petition. (ECF No. 12.) The court granted the motion and required Petitioner to commence state-court post-conviction proceedings within 60 days of the date of the stay order. (ECF No. 13.) Petitioner sought, and the court granted, three motions for extension of time to commence state court proceedings.

5

(ECF Nos. 15, 18, 20.) Petitioner later filed a motion to lift the stay seeking to proceed with only his exhausted claim. (ECF No. 21.) The Court granted the motion and the reopened this case. (ECF No. 22.) Respondent has filed an answer in opposition. (ECF No. 8.)

**II. Standard**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires federal courts to uphold state court adjudications on the merits unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.

A "state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the

state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quotation omitted). Under § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Habeas relief may be granted only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002).

### III. Discussion

Petitioner asserts that the prosecution presented insufficient evidence to sustain his convictions for second-degree murder and assault with intent to do great bodily harm less than murder.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On direct review, review of a sufficiency of the evidence challenge focuses on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable

doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16).

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009)). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205 (citing *Jackson*, 443 U.S. at 319). Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.* In short, "deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; [then] deference should be given to the [state court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008) (citation omitted). The *Jackson* standard is "exceedingly general" and therefore Michigan courts are afforded

8

"considerable leeway" in its application. *Davis v. Lafler*, 658 F.3d 525, 535 (6th Cir. 2011).

### 1. Second-degree murder

The elements of second-degree murder in Michigan are "'(1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse.'" *Liggion*, 2016 WL 1688678, at *1 (Mich. Ct. App. Apr. 26, 2016) (quoting *People v. Goecke*, 457 Mich. 442, 463-464 (1998)). Petitioner argues that the prosecution failed to present sufficient evidence of the second and third elements: that he caused Pratt's death and that he acted with malice. "Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Goecke*, 457 Mich. At 464 (1998).

The Michigan Court of Appeals held that when the evidence is viewed in the light most favorable to the prosecution, a rational jury could have found Petitioner guilty of second-degree murder beyond a reasonable doubt:

> There is no dispute that Pratt's death was caused by a gunshot wound to his head. Defendant admitted that he fired a particular Ruger nine-millimeter handgun inside a crowded club on the night of a party, and this gun was recovered by the police. There is expert testimony that a nine-millimeter bullet found in the ceiling of the club, a nine-millimeter bullet recovered from Kira Briley's arm, and two nine-millimeter shell casings found inside the club were all fired by defendant's handgun. The expert also reconstructed the flight path of the bullet recovered from the ceiling and determined that the bullet travelled in a southeast direction at a 19-degree angle before hitting the ceiling. The expert

9

further opined that Pratt was struck by a bullet in "stabilized" flight while the bullet that hit Briley's arm must have hit another object before it struck her. Police officers found no evidence that a bullet had ricocheted off of any object inside the club. There is evidence that placed defendant in the northwest part of the club, near the area of origination for the nine-millimeter bullet that was recovered from the ceiling of the club. Eyewitnesses also testified that multiple shots were fired from the northwest part of the club. Briley was in the southeast part of the club when she was hit and Pratt's body was found in the middle of the room. Based on this evidence, the expert witness opined that one nine-millimeter bullet hit Pratt in stabilized flight, became de-stabilized so as to lose energy, and then hit Briley, ultimately becoming lodged in her arm.

Considering all of the evidence in the light most favorable to the prosecution, a reasonable jury could have found beyond a reasonable doubt that defendant fired two shots along a similar northwest-to-southeast path, that one of those bullets passed through Pratt's head and then struck Briley in the arm, and that Pratt died as a result. Such a finding is consistent with the opinion of the prosecution's expert witness. … [T]he evidence is sufficient to support defendant's conviction for second-degree murder.

Nevertheless, defendant essentially argues on appeal that causation was not proven conclusively. However, certainty is not the appropriate standard. The prosecution does not have to disprove every reasonable alternate theory. *Id*. Instead, the prosecution is only obligated to "introduce evidence sufficient to convince a reasonable jury in the face of whatever contradictory evidence the defendant may provide." *People v. Konrad*, 449 Mich. 263, 273 n 6 (1995). Moreover, the jury had the opportunity to weigh the evidence and evaluate the credibility of the witnesses. This Court does not interfere with this role of the jury, and "[a]ll conflicts in the evidence are resolved in favor of the prosecution." *People v. Stevens*, 306 Mich. App 620, 628; 858 NW2d 98 (2014).

*Liggion*, 2016 WL 1688678, at *1-2.

The Michigan Court of Appeals' decision was not contrary to, or an unreasonable application of, Supreme Court precedent. In addition to the evidence detailed by the state court, additional evidence supports the state court's decision. While Petitioner maintained that he fired at the ceiling, it would have been reasonable for the jury to conclude that Petitioner's other actions indicated a consciousness of guilt. Petitioner initially lied to police about his actions on that evening. He hid his guns and ammunition after the shooting. His ammunition was of the same type and brand that caused injury to Briley's arm. In addition, Petitioner's claims that he fired only two gunshots and that both were aimed at the ceiling are contradicted by firearms expert Jeffrey Crump's testimony that the bullet recovered from Briley's arm had been fired from Petitioner's Ruger handgun.

For these reasons, Petitioner has failed to persuade the Court that the prosecution failed to introduce sufficient evidence to establish all of the elements of second-degree murder beyond a reasonable doubt. Petitioner is therefore not entitled to federal habeas relief on this claim.

### 2. Assault with intent to do great bodily harm

Petitioner also argues that there is insufficient evidence in the record to support his conviction for assault with intent to do great bodily harm because the prosecution failed to establish the intent element of this offense. Under Michigan law, the elements of assault with intent to do great bodily harm less than murder are

11

"'(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder.'" *Liggion*, 2016 WL 1688678, at *2 (quoting *People v. Parcha*, 227 Mich. App 236, 239 (1997)). Intent may be established by "minimal circumstantial evidence" and may be inferred from a defendant's "use of a dangerous weapon" and by the injuries sustained by the victim." *Id*. The prosecution was not required to show that Petitioner intended to harm or kill the victim, merely that he intentionally performed an act "that is in obvious disregard of life-endangering consequences." *People v. Werner*, 659 N.W.2d 688, 692 (Mich. Ct. App. 2002).

The Michigan Court of Appeals held that sufficient evidence was presented to establish the intent element:

> Here, it can be inferred from defendant's actions that he intended to cause serious or aggravated injury. On the night of the shooting, defendant left the party after seeing someone with a gun, retrieved his own gun, returned to the party with the gun, and fired it inside the crowded club. A gun is a lethal weapon likely to cause serious injury. … The jury could have reasonably found that defendant fired his gun into the crowd, rather than straight into the air, based on expert testimony that the bullet fired by defendant's gun and found in the ceiling of the club had traveled at a 19-degree angle, which shows a flight path that is fairly low, *i.e*., more parallel than perpendicular to the ground. Briley was in fact injured by another bullet fired by defendant's gun. Because defendant took deliberate steps to obtain a lethal weapon, shot it into a crowd of people, and injured Briley as a result, it was reasonable for the jury to infer that defendant intended to cause great bodily harm. …
>
> Defendant nonetheless argues that because there was no evidence that he knew or intended to harm Briley, the jury must have relied on the

12

> transferred-intent instruction[] to find the requisite intent. Defendant further argues that this means the evidence of intent was insufficient because he merely fired his weapon indiscriminately into the air, there was no evidence that he intended to hurt anyone else, and thus there was no intent that could be transferred to Briley. According to the doctrine of transferred intent, "'where A aims at B with intent to injure B but, missing B, hits and injures C, A is guilty of battery of C.'" *People v. Lovett*, 90 Mich.App 169, 171; 283 NW2d 357 (1979) (citation omitted). Defendant maintains that he cannot be guilty of assaulting C without identifying B.
>
> However, defendant did not need to specifically intend harm to Briley or any other specifically identified individual to possess the requisite intent. In other words it is not necessary to conclusively identify B in order to show defendant's intent. Instead, "'[i]t is only necessary that the state of mind exist, not that it be directed at a particular person.'" … Moreover, it is also reasonable to infer that defendant intended to shoot someone when he took deliberate steps to obtain a gun, returned to the party, and fired the weapon into the crowd. That intent transfers to Briley even if the identity of the originally intended victim is unknown.
>
> In sum, there is more than the minimal circumstantial evidence needed to prove beyond a reasonable doubt that defendant possessed the intent to cause serious, aggravated injury. Therefore, the evidence is sufficient to support defendant's conviction for assault with intent to do great bodily harm less than murder.

*Liggion*, 2016 WL 1688678, at *2-3.

Petitioner fails to overcome the double deference owed to the court of appeals' determination that the evidence was sufficient to support all elements of the assault with intent to do great bodily harm less than murder charge. The Michigan Court of Appeals applied the correct legal standard and applied it with reference to the elements of the crime. By Petitioner's own admission, he discharged his weapon in

13

a crowded nightclub. Expert witness testimony was presented showing that his weapon was not, as Petitioner claimed, pointed directly at the ceiling when he fired it. Additionally, the bullet recovered from Briley's arm had been fired from Petitioner's weapon. The state court's decision was not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. Therefore, Petitioner is not entitled to habeas relief on this claim.

### IV. Certificate of Appealability and *In Forma Pauperis*

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that relief is unwarranted. Therefore, the Court denies a certificate of appealability.

The standard for granting a petitioner for leave to proceed *in forma pauperis* on appeal is less strict than the standard for granting a certificate of appealability. *See Foster v. Ludwick*, 208 F.Supp.2d 750, 764 (E.D. Mich. 2002). While a

14

certificate of appealability requires a substantial showing of the denial of a constitutional right, a court may grant *in forma pauperis* status on appeal if it finds that an appeal is being taken in good faith. *See id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R. App. 24 (a). Although jurists of reason would not debate the Court's resolution of the petition, an appeal could be taken in good faith. Therefore, Petitioner may proceed *in forma pauperis* on appeal.

## V. Conclusion

For the reasons stated above, the petition for a writ of habeas corpus is **DENIED**. The Court also **DENIES** a certificate of appealability.

The Court finds Petitioner may proceed on appeal *in forma pauperis* because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

The Court directs the Clerk of Court to **AMEND** the case caption to substitute Fredeane Artis as the Respondent.

**SO ORDERED**.

s/ Paul D. Borman
Paul D. Borman
United States District Judge

Dated: May 31, 2024